UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH KOTOCH, | ) | Case No. 20-cv-2538 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | William H. Baughman |
| GROSSINGER CITY TOYOTA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# OPINION AND ORDER

In 2018, Plaintiff Joseph Kotoch, an Ohio resident, unsuccessfully tried to lease a Mercedes-Benz. Unbeknownst to him, he had several derogatory remarks on his credit report for late payments on a lease for a Toyota Camry that his son, Joseph Kotoch, Jr. executed in 2016 in Illinois. Though Plaintiff had no part in the lease between his son and the Illinois Toyota dealership, his name was on the lease and reported on his credit report. Seeking to fix this error, Plaintiff sued Defendant Grossinger City Toyota, Acia TC Auto LLC, and Toyota Motor Credit Corp. for violations of the Fair Credit Reporting Act and the Ohio Consumer Sales Practices Act, as well as fraud. Acia moves to dismiss the case against it for lack of personal jurisdiction ([ECF No. 66](#)) and Toyota Motor Credit moves to dismiss the CSPA and fraud claims for failure to state a claim ([ECF No. 63](#)). For the reasons that follow, the Court **GRANTS** both motions.

## STATEMENT OF FACTS

Taking the facts alleged in the second amended complaint as true and construing them in Plaintiff's favor, as the Court must on the motion before it, Plaintiff base his claims on the following facts.

On March 19, 2016, Plaintiff's son, Joseph Kotoch, Jr., leased a 2016 Toyota Camry from Defendant Grossinger City Toyota—which Defendant Acia TC Auto LLC purchased in 2018—and was financed through Defendant Toyota Motor Credit Corp. ([ECF No. 57](), ¶ 14, PageID #540.)  As part of the lease, Plaintiff's son executed a written lease agreement and credit application with Grossinger City Toyota using his own date of birth and social security number.  (*Id.*, ¶¶ 18–19, PageID #541.) However, Defendants used Plaintiff's name, date of birth, and social security number to obtain credit for the lease instead and began incorrectly reporting the lease on Plaintiff's credit report, even though Plaintiff never signed, executed, or agreed to the lease or credit application.  (*Id.*, ¶¶ 20–27, PageID #541.)

Since then, the lease has been reported on Plaintiff's credit report, and Plaintiff and his son have tried to correct the alleged reporting error.  On December 12, 2017, Plaintiff's son called Toyota Motor Credit, informing them of the error. Four days later, Plaintiff's son called again, "stating that he cannot drive the vehicle because he cannot get new tags from the BMV due to the issue and he feels that he should not have to pay for the car until the issue is fixed." (*Id.*, ¶¶ 30–31, PageID #541–42.)  As a result, Plaintiff's son did not make payments for the lease for six months because he was unable to register the vehicle.  (*Id.*, ¶ 32 PageID #541; *Id.*, ¶ 52, PageID #544.)

In April 2018, Plaintiff attempted to lease a vehicle at Mercedes-Benz of Bedford, but his application was denied due to the derogatory history on his credit report, which he discovered was a result of his son's lease. (*Id.*, ¶¶ 34–35, PageID #542.) In May 2018, Plaintiff began contacting Acia including its Finance Director Zuhri Thahir, Vice President of Sales Brian Schnurr, General Manager Rick Angel, and Jeff Jackson. Acia provided Plaintiff with information about the lease and on May 14, 2018, informed him that he needed to refinance the contract and take other steps to resolve the reporting issues. (*Id.*, ¶¶ 36–40, PageID #543.) Plaintiff, however, has been unable to resolve the credit reporting issues.

Next, Plaintiff secured counsel to request that Toyota Motor Credit remove the lease from his credit report. Toyota Motor Credit responded, stating that after their investigation the information reflected in their records is correct and that they report the account to the credit reporting agencies in a manner that is consistent with their records such that they will not remove the error. (*Id.*, ¶ 44, PageID #543.) Then, Plaintiff disputed the lease with the major credit bureaus—Experian, Trans Union, and Equifax. (*Id.*, ¶ 45, PageID #543.) In each case, the credit bureaus denied his request and informed him that the information that Toyota Motor Credit provided was valid and that the report listed six late payments. (*Id.*, PageID #544–48.)

## STATEMENT OF THE CASE

On October 21, 2020, Plaintiff sued in State court Defendants Toyota Motor Credit Corp. and Grossinger City Toyota, Equifax, Trans Union, and Experian for violating the Fair Debt Collection Practice Act. Defendants timely removed, and

3

Plaintiff has since twice amended his complaint, dropping the FDCPA claim and adding claims for fraud and violations of Fair Credit Reporting Act and the Ohio Consumer Sales Practices Act. Since then, Plaintiff has dismissed Defendants Equifax, Trans Union, and Experian, leaving only Defendants Grossinger Toyota Motor Credit and Acia. (ECF Nos. 28, 39, 53.)

On May 20, 2022, Defendant Toyota Motor Credit moved to dismiss Plaintiff's State-law claims—Counts Three (fraud) and Four (violation of the Consumer Sales Practices Act)—for failure to state a claim. ([ECF No. 63](#).) On June 13, 2022, Defendant Acia moved to dismiss for lack of personal jurisdiction. ([ECF No. 66](#).)

## ANALYSIS

### I. Acia's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant Acia moves to dismiss the claims against it under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that the Court lacks personal jurisdiction over it.

#### I.A. Governing Legal Standard

Jurisdiction is determined at the commencement of the action. *See, e.g.*, *Mollan v. Torrance*, 22 U.S. (Wheat.) 537, 539–40 (1824) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought."). No matter if "jurisdiction arises under 28 U.S.C. §§ 1331 or 1332, Plaintiff must satisfy the forum state's requirements for personal jurisdiction." *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 958 (N.D. Ohio 2018). Where, as here, a defendant files a properly supported motion to dismiss for lack of personal jurisdiction, "a plaintiff must prove that jurisdiction is proper over each defendant individually." *Zobel v. Contech*

4

*Enters.*, 170 F. Supp. 3d 1041, 1044 (S.D. Ohio 2016) (quoting *SFS Check, LLC v. First Bank of Del.*, 744 F.3d 351, 354–56 (6th Cir. 2014)).

The district court may "decide the motion on the materials submitted, permit discovery in order to aid in deciding the motion, and/or conduct an evidentiary hearing." *Georgalis*, 324 F. Supp. 3d at 958 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Based on the briefs and the record, the Court exercises its discretion to decide the motions without an evidentiary hearing. Therefore, the Court considers the pleadings and declarations in the light most favorable to Plaintiff. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). And Plaintiff "need only make a *prima facie* case of jurisdiction." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). In this procedural posture, Plaintiff's burden is "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

### I.B. Personal Jurisdiction Over Acia

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff makes no argument that Acia is subject to general jurisdiction, and the record would not support the exercise of general jurisdiction over Acia.

To establish specific personal jurisdiction over a defendant, the Court must find that (1) the defendant is amenable to service of process under the State's long-arm statute; and (2) the exercise of personal jurisdiction is proper under the federal

5

Due Process Clause. *Conn*, 667 F.3d at 711. "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

In his second amended complaint and in his affidavit, Plaintiff alleges that Acia made "numerous false statements" to him on which he relied in an effort to discharge the lease in question and fix his credit report. (ECF No. 57, ¶ 118, PageID #554; ECF No. 71-1, ¶¶ 27 & 28, PageID #691–92.) He argues that Acia's conduct and alleged statements vest the Court with jurisdiction under six provisions of Ohio's long arm statue.

### I.B.1. Long-Arm Statute

Ohio's long-arm statute confers specific personal jurisdiction over a defendant who engages in any of nine acts that occur "in this state." Ohio Rev. Code § 2307.382(A)(1)–(9). The Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution in April 2021. *See* Ohio Rev. Code § 2307.382(C) ("[A] court may exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution."). Because this dispute arose in 2016 and 2018, that amendment does not apply. See Ohio Rev. Code § 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Therefore, the Court considers whether the pre-amendment statute authorizes the exercise of jurisdiction over Acia. That statute provides, in relevant part:

6

    (A)    A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

        (1)    Transacting any business in this state;

        (2)    Contracting to supply services or goods in this state;

        (3)    Causing tortious injury by an act or omission in this state;

        (4)    Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

        \*    \*    \*

        (6)    Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

        (7)    Causing tortious injury to any person by a criminal act.

Ohio Rev. Code § 2307.382 (1988).

        Contrary to Plaintiff's argument, Acia's alleged actions do not vest the Court with jurisdiction over it under any provision of Ohio's long-arm statute. The complaint does not allege, and Plaintiff's affidavit does not assert, that the Toyota Camry was leased in Ohio or that Grossinger Toyota solicited Plaintiff's son's business in Ohio. Instead, both documents show that Plaintiff's son leased the vehicle at the Grossinger Toyota dealership in Illinois. (ECF No. 57, ¶ 14, PageID #540; ECF No. 71-1, ¶ 5, PageID #688.) Further, even assuming that Grossinger Toyota in some way solicited Plaintiff's son's business, Acia had no part in the 2016 transaction. It did not purchase Grossinger Toyota's assets until 2018, approximately two years after

the lease was executed, and Plaintiff's allegations do not create a reasonable inference that Acia is licensed to do business in Ohio or that it solicits business from Ohio consumers. (ECF No. 6, ¶¶ 2, 3, 6, PageID #637–38.) In short, even construing the record in Plaintiff's favor, Acia did not transact business in Ohio, did not contract to supply goods or services in the State, and did not cause tortious injury in Ohio.

As for the remaining subsections of the long-arm statute, the allegation that Acia made "false representations," does not subject it to this Court's jurisdiction. Aside from this conclusory assertion, Plaintiff merely points to an email from Zuhri Thahir, advising Plaintiff that, to resolve the issue, he needed to reach out to Toyota Motor Credit and provide further information. (ECF No. 71-1, ¶ 20, PageID #291.) At most, Acia relayed information to Plaintiff on behalf of Toyota Motor Credit. Even if this information is knowingly false, merely relaying it to Plaintiff does not plausibly allege that Acia's conduct amounts to a criminal act or an actionable tort.

Plaintiff repeatedly argues that Acia continued to hold him responsible for the transaction that his son executed, but the record reflects that it was Toyota Motor Credit, not Acia, that administered Plaintiff's credit account and reported to the credit bureaus. At most, Acia's only involvement was providing customer service at Plaintiff's request. Without more, the Court does not have personal jurisdiction over Acia under Ohio's long-arm statue.

### I.B.2. Due Process

Because the Court determines that Plaintiff's allegations, construing them in his favor, fail to reach Acia under Ohio's long-arm statute, the Court has no reason to consider whether the exercise of personal jurisdiction over Acia would be consistent

with due process or comport with traditional notions of fair play and substantial justice. For all these reasons, the Court **GRANTS** Acia's motion to dismiss (ECF No. 66).

## II. Rule 12(b)(6) Motion to Dismiss

Defendant Toyota Motor Credit moves to dismiss Plaintiff's State-law claims under the Ohio Consumer Sales Practices Act (Count III) and fraud claim (Count IV). ([ECF No. 63](#).)

To withstand a motion to dismiss, Plaintiff must allege facts that "state a claim to relief that is plausible on its face" and raise his "right to relief above the speculative level." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a complaint must offer more than "labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation omitted). Rule 8, along with *Twombly* and *Iqbal*, requires a plaintiff to "plead enough factual matter to raise a plausible inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (cleaned up). This inference "depends on a host of

considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Id.* (citations omitted). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

### II.A. Ohio Consumer Sales Practices Act (Count III)

Plaintiff's second amended complaint alleges that Defendants violated the Ohio Consumer Sales Practices Act by (1) falsely reporting the lease on Plaintiff's credit report; and (2) requiring that he assume the lease to end the negative credit reporting, which resulted in his financial injury. (ECF No. 57, ¶¶ 112–15, PageID #553.) Defendant argues that Plaintiff is not entitled to relief under the Act because he is not, by definition, a consumer and did not engage in a consumer transaction. (ECF No. 63, PageID #595.)

The Act provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Rev. Code § 1345.02(A). When a supplier violates the Act, "a consumer has a cause of action and is entitled to relief." *Id.* § 1345.09. A "'consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." *Id.* § 1345.01(A). And a "'consumer' means a person who engages in a consumer transaction with a supplier." *Id.* § 1345.01(D).

10

According to the allegations in his second amended complaint (ECF No. 57, ¶¶ 111 & 112, PageID #553), Plaintiff did not engage in the lease transaction in question and, therefore, is not a consumer entitled to relief under this statute, *see Rose-Gulley v. Spitzer Akron, Inc.*, No. 21778, 2004-Ohio-4063, ¶ 13 (Ohio Ct. App.) (holding that, absent a showing that the plaintiff was engaged in a consumer transaction, she is not a consumer within the meaning of the CSPA).

Plaintiff argues that he is a consumer for purposes of the CSPA because Defendants "created a consumer transaction" by reporting him to the credit bureaus. But again, Plaintiff is not a consumer under the CSPA because he did not engage in the transaction. The plain language of the statute makes this clear: Plaintiff did not engage in a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible." Ohio Rev. Code § 1345.01(A). Indeed, Plaintiff engaged in no transaction at all with Toyota Motor Credit. To be sure, the record shows that Plaintiff was erroneously made the lessee of his son's car, but there is no allegation that he is the consumer in that transaction as the Act requires. His predicament does not justify judicial expansion or rewriting of the statute. *See Dillon v. Farmers Ins. of Columbus, Inc.*, 145 Ohio St. 3d 133, 2015-Ohio-5407, 47 N.E.3d 794, ¶ 17 (a court "may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording").

Because he paid over $5,000 to Defendants to settle the lease and resolve the credit issues, Plaintiff argues that these payments constitute consumer transactions under the Act. But these facts are not alleged in Plaintiff's second amended

11

complaint, which he drafted. At the motion-to-dismiss stage, the Court may not consider materials beyond the pleadings. For these reasons, Plaintiff fails to state a claim for relief under the Consumer Sales Practices Act.

### II.B. Fraud (Count IV)

Plaintiff alleges that Defendants made "numerous false statements . . . including that the only way that the Toyota Lease would be removed from the credit reports would only if [sic] Plaintiffs agreed to assume the lease." (ECF No. 57, ¶ 118, PageID #554.)

Under Ohio law, the elements of civil fraud are (1) a misrepresentation, (2) material to the transaction, (3) made falsely, knowingly, or recklessly, (4) with the intention of misleading another into a justifiable reliance on those facts, (5) that causes the other party injury. *Miller v. Medical Mut. of Ohio*, No. 2012CA0020, 2013-Ohio-3179, ¶ 45 (Ohio Ct. App.) (citing *Burr v. Board of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St. 3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus)).

Rule 9(b) imposes a heightened standard for pleading fraud, requiring a plaintiff to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Generally, Rule 9(b) requires a plaintiff "(1) to specify the allegedly fraudulent statements; (2) identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

To support his fraud claim, Plaintiff alleges that Defendants falsely stated that, if Plaintiff were to assume the lease, it would be removed from his credit reports. This allegation, however, does not state a claim for fraud. First, he does not allege how or why this statement was fraudulent, such as suggesting that the lease would not actually be removed from his credit reports after he assumed it. More importantly, Plaintiff does not allege that Defendants' statement caused him injury, such as monetary harm resulting from his reliance on that statement. Without more, Plaintiff does not sufficiently plead his claim.

To the extent the Court construes Plaintiff's second amended complaint as alleging that Defendant committed fraud by reporting the lease under Plaintiff's name, the Fair Credit Reporting Act preempts that claim. The only harm that Plaintiff asserts, and that his allegation otherwise implies, is that Defendants' conduct negatively impacted his credit report, which in turn inhibited his ability to secure a loan. His claim directly stems from Toyota Motor Credit's furnishing Plaintiff's credit information to the credit bureaus. The FCRA preempts any such claim under 15 U.S.C. § 1681s-2, which "relate[s] to the responsibility of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(i); *see Bryan v. Bank of Am. Home Loans Servicing, LP*, No. 3:10cv959, 2011 WL 5526071, at *5 (N.D. Ohio 2011).

For these reasons, Plaintiff fails to state a claim for fraud.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** both Defendant Acia TC Auto LLC's motion to dismiss for lack of personal jurisdiction and Defendant Toyota Motor

Credit's motion to dismiss for failure to state a claim. The Court **DISMISSES** Defendant Acia from the case and Counts III and IV against Defendant Toyota Motor Credit.

**SO ORDERED.**

Dated: August 23, 2022

                                       J. Philip Calabrese
                                       United States District Judge
                                       Northern District of Ohio